## Richmond

## Quinn-Marshall Co. v. Whittaker and Others.

### November 12, 1914.

1. Fraudulent Conveyance—*Suit to Set Aside—Lien—Object of Section 2460 of Code—Conveyance Not Set Aside—Effect.*—Section 2460 of the Code, giving to creditors, suing to set aside transfers of property declared void by the two preceding sections, a lien on the property from the time of bringing their suits, is intended to benefit those creditors who, by their diligence, succeed in bringing into court for distribution a fund, or assets, placed beyond the reach of the unsecured creditors by the fraudulent or voluntary act of the debtor; and as to such creditors as attack the fraudulent or voluntary act and succeed in subjecting such fund or assets, this section gives a lien dating from the filing of a memorandum of a *lis pendens*, but the lien it provides for is never perfected unless and until the deed or other act of the debtor attacked is adjudicated to be fraudulent and void. If there is no such adjudication, the lien is inchoate and ineffectual.

2. Lien Under Code, Section 2460—*Waiver.*—The lien given by section 2460 of the Code may be, and in the case in judgment has been, waived by the subsequent contracts and dealings of the creditor with the debtor.

3. Liens—*Statutory Lien—Inconsistent Contract Lien—Effect.*—When one having a lien by statute also reserves a lien by special agreement or contract, the two liens being inconsistent, it must be presumed that the parties intended to substitute the lien by contract for the statutory lien.

Appeal from a decree of the Circuit Court of Pulaski county. Decree for the defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Wysor & Gardner,* for the appellant.

*H. C. Gilmer* and *A. T. Eskridge,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

On the 1st day of June, 1910, R. A. Whittaker and M. L. Whittaker, his wife, claimed to be the owners, and were occupants of two lots of ground situated in the town of Pulaski, Va., together with a two-story, double brick store-house thereon, comprising two adjoining store rooms on the ground floor, and a flat, or residence rooms, above; R. A. Whittaker being also the owner of a stock of general merchandise in said stores where he was then and had been for some time prior conducting a mercantile business.  There were existing encumbrances on this real estate, one of which was a deed of trust executed by Whittaker and wife to J. N. Bosang, trustee, on September 1, 1908, duly recorded, securing to O. C. Brewer $2,400, stated in the deed to be the purchase price for the property conveyed, the deed also stating that contemporaneously with the execution thereof O. C. Brewer and wife, by deed to be recorded, conveyed the same property to "the parties of the first part," but this last-named deed, it seems, was never recorded, which fact, however, has no material bearing upon the questions involved in this litigation.

June 1, 1910, Whittaker and wife, by deed duly recorded, conveyed to A. T. Eskridge, Jr., the said real estate and stock of general merchandise in the store rooms thereon, together with another stock of general merchandise which R. A. Whittaker had purchased at a bankrupt sale and purposed removing to his store rooms at Pulaski, in trust, to secure to Wm. H. Copenhaver a debt of $3,500.  It further appears that by deed bearing date March 29, 1911, said Whittaker and wife conveyed another general or shifting stock of merchandise sit-

uated in a certain named building at Glade Springs, Va., together with all the store fixtures of every kind belonging to the said Whittaker and in his stores at Pulaski, to S. W. Keys, in trust, to secure to Robinson & Ryburn a debt of $2,000.

On May 22, 1911, Bayless Bros. & Co. and the Pulaski Grocery Co., claiming to be creditors of R. A. Whittaker, filed their bill in the Circuit Court of Pulaski county against Whittaker and wife, the trustees and the creditors named in the two deeds above mentioned; the object of the suit being to have each of said deeds declared fraudulent and void as to the debts due from R. A. Whittaker to the complainants, respectively, their bill charging that said deeds and each of them were made to hinder, delay and defraud the complainants, and were therefore void as to their debts set out in the bill.

On May 26, 1911, Quinn-Marshall Co., a corporation, pursuant to section 2458, Code, 1904, filed its petition in this chancery cause, setting forth that R. A. Whittaker was indebted to it in the sum of $951.65, as evidenced by five several notes executed by Whittaker, &c., and united in the charges of fraud, etc., made in complainants' bill, and further charged that W. H. Copenhaver knew that the deed to secure him was fraudulent when he accepted the same, and that. A. T. Eskridge, Jr., the trustee, knew or ought to have known that the deed was fraudulent; and further, that Robinson & Ryburn knew that the deed to secure them was fraudulent when they accepted it, and likewise S. W. Keys, the trustee named in that deed, knew, or ought to have known, that the deed was fraudulent; and, therefore, both deeds were fraudulent in law and in fact as to petitioner's debt, etc. Petitioner, Quinn-Marshall Co., also filed its *lis pendens* in the clerk's office of Pulaski Circuit Court, pursuant to section 2460 of the Code.

The above named cause, upon the bill of complaint as well as upon the petition of Quinn-Marshall Co., having matured for hearing, came on to be heard, and the court being of opinion that an account of liens on the property of the debtor, R. A. Whittaker, should be taken, by its decree of December 16, 1911, referred the cause to a commissioner to take and report all accounts necessary to a final adjudication of the questions involved, specifying the inquiries to be made, and the accounts to be stated.

Before there was a report of a commissioner in response to this decree of reference, to-wit, on the 31st of August, 1912, Whittaker made an assignment of his general stock of merchandise, fixtures, accounts, notes, etc., to A. T. Eskridge, Jr., and J. L. Wysor, as trustees, for the benefit of certain creditors named and all of his other creditors. These trustees sold the stock of merchandise for $1,126, and Quinn-Marshall Co. notified them to hold this money, which they did, and reported it to court as the proceeds of the sale of the stock of goods embraced in the deed of June 1, 1910, alleged by Quinn-Marshall Co. to be fraudulent and void; and the court, it seems, thereafter proceeded to deal with this fund as the only remaining subject of controversy in the cause.

Between the date of the filing by Quinn-Marshall Co. of its petition in the cause, on May 26, 1911, and the date of the general assignment by R. A. Whittaker of August 31, 1912, it appears that the following transactions took place between the complainants in the cause and Quinn-Marshall Co., on the one hand, and R. A. Whittaker and W. H. Copenhaver, on the other: On June 6, 1911, an agreement was entered into by which Whittaker agreed to convey the real estate described in the deeds of trust attacked in the original petition filed by Quinn-Marshall Co. and also the fixtures in Whittaker's store to secure

the complainants in the original bill and petitioner, Quinn-Marshall Co., the amount of their respective debts, subject only to prior liens on the real estate of Whittaker in favor of W. H. Copenhaver and O. C. Brewer. In this agreement it was further provided that certain other creditors of Whittaker, viz., Robinson & Ryburn, who at that time held a deed of trust on the store fixtures, should receive certain goods of Whittaker at 75 *per cent.* of their cost price in payment of Whittaker's debt to them, and to release their lien on the store fixtures; Quinn-Marshall Co. and said complainants releasing the liens claimed by them, respectively, by reason of the bill filed by the latter and the petition filed by the former in that suit on the goods so received by Robinson & Ryburn. Pursuant to this agreement and on the same day, Whittaker and wife executed a deed of trust to R. L. Gardner, trustee, to secure complainants in the original bill to the amount of about $800, and Quinn-Marshall Co. to the amount of $951.65, conveying for the purposes of the deed Whittaker's real estate and certain fixtures in his brick store building; and on that same day W. H. Copenhaver released his deed of trust of June 1, 1910, attacked in the petition of Quinn-Marshall Co., on the stock of goods of Whittaker conveyed in that deed.

It further appears that subsequent to the filing by Quinn-Marshall Co. of its original petition in the cause the complainants in the original bill were paid their respective claims in full, and the petitioner, Quinn-Marshall Co., received the following sums on account of the claim asserted by it: Paid by Whittaker himself $420.00; by trustees from sale of Whittaker's real estate $69.99; and by trustees from sale of the store fixtures $193.75; total $680.74, leaving a balance due on this debt of Whittaker of between $300 and $400.

The commissioner to whom the cause was referred for inquiry and report of (1) what real estate was owned

by said Whittaker and wife or either of them, and the liens thereon, together with the amounts and priorities of such liens, and (2) what liens were upon the stock of goods owned by Whittaker or any other personal estate belonging to him, the nature thereof, and the amounts and priorities of the same, etc., filed an original and supplemental report to the court, the only feature of which is material to the issue here being that referred to and complained of in the following exceptions filed by the Quinn-Marshall Co.:

"This report and the supplemental report . . . just filed in the cause, are both excepted to because said commissioner wholly fails to report in his original and supplemental report the lien of petitioner, Quinn-Marshall Co., upon the stock of goods conveyed by defendants, R. A. Whittaker and wife, to A. T. Eskridge by the deed of June 1, 1910, exhibited with the bill, and also made a part of said petition.

"The said Quinn-Marshall Co., now sole complainant in the cause, duly filed its petition in the original suit on the 26th day of May, 1911, and on the same day left with the clerk of this court, in the clerk's office thereof, for recordation in the manner prescribed by law, a *lis pendens* as required by section 2460 of the Code . ."

With the exception, the original *lis pendens,* with the clerk's endorsement thereon showing that it was duly recorded and indexed May 26, 1911, was exhibited.

The court, being of opinion that Quinn-Marshall Co. had no lien prior or paramount to those of the general creditors, but stood on the same footing as the general creditors of R. A. Whittaker in the cause, overruled the exceptions to the commissioner's report, confirmed the report, and adjudged and decreed that the claim of Quinn-Marshall Co. be paid *pro rata* along with all other general creditors of R. A. Whittaker in the distribution of the funds in the hands of the trustees, J. L. Wysor and

A. T. Eskridge, Jr. From this decree Quinn-Marshall Co. appeals.

The questions presented are: (1) Did appellant, by reason of the filing of its petition in the cause and causing to be docketed and indexed its *lis pendens* on May 26, 1911, pursuant to section 2458 and 2460 of the Code, acquire a lien prior to that of the general creditors of Whittaker upon the fund under the control of the court received from the sale of the shifting stock of goods in question, pursuant to the general assignment made by Whittaker on August 31, 1912; and (2) If appellant acquired such lien, has it by its subsequent conduct and dealings with Whittaker and other of his creditors waived the same?

Appellant bases its right to a lien prior to that of the general creditors of Whittaker under the assignment made by him August 31, 1912, solely upon the provision of the deed made by him on June 1, 1910, conveying to the trustee therein named, along with other property, a stock of general merchandise to secure a debt due to W. H. Copenhaver, the deed containing no other provision on which the court could base a judgment of fraud on the part of any one connected therewith.

The provision of section 2458 of the Code, that every gift, assignment, conveyance, etc., given with intent to delay, hinder or defraud creditors, etc., shall be void, are broad enough to reach and afford relief to subsequent creditors, such as is appellant, who can show themselves entitled thereto; but the concrete question here is, whether or not appellant can rightly claim and obtain the benefit of that statute and section 2460 of the Code, in view of the facts and circumstances narrated above as appearing in the record, and in fact not controverted.

It is true, as appellant contends, that this court in *Welsh* v. *Sollenberger,* 85 Va. 441, 8 S. E. 91, approved the rule sanctioned in *Price* v. *Thrash,* 30 Gratt. (71 Va.)

515, that where a bill to set aside a conveyance contains positive and specific allegations of fraud, those allegations are taken as true on the bill being taken for confessed; but that is not the case made in the petition filed by appellant in this cause, as a creditor of the grantor in the deed of June 1, 1910, attacked as fraudulent as to a debt due it from the grantor, and which the appellant did not attack as fraudulent until nearly one year thereafter. There is neither in the original bill in the cause nor in the petition of appellant a material allegation of fraud not referable merely to the provision in the deed attacked which conveyed a general and shifting stock of merchandise; the deed containing nothing unusual except very short time for the payment of the debts thereby secured, and containing no provision very favorable to the grantee, Whittaker, and certainly nothing quite so favorable to him as contained in the deed of trust which appellant assented to for its benefit that was executed by Whittaker and wife on June 6, 1911, ten days after appellant's petition in this cause was filed. Pursuant to this same agreement between appellant, the complainants in the original bill, R. A. Whittaker and W. H. Copenhaver, and on the same date, June 6, 1911, Copenhaver released of record his deed of trust of June 1, 1910, attacked in appellant's petition, in so far as the same conveyed the stock of goods mentioned therein. This release of the lien attacked by appellant was not only before its suit matured, but appellant then, within ten days after it had brought a suit and claimed a lien on the stock of goods under the statute, took a security of a different kind and wholly inconsistent with the lien provided for in the statute. Not only so, but, as we have seen, appellant assented, impliedly at least, to the debtor Whittaker's continuance of his mercantile business until both complainants in the original bill in this cause were paid in full, and it received from Whittaker and certain

trustees from sales of Whittaker's real estate and store fixtures payments aggregating largely more than one-half of the debt claimed in its petition in the cause before it took a single step to perfect a statutory lien in its favor upon Whittaker's shifting stock of merchandise, and which finally went into the hands of certain trustees under the deed of August 31, 1912, with appellant's assent, and after other creditors of Whittaker had acquired rights, and whose equities became involved in the determination of the rights of the general creditors and the attacking creditors of Whittaker in this cause.

Section 2460 of the Code, *supra,* is intended to benefit those creditors who by their diligence succeed in bringing into court for distribution a fund, or assets, placed beyond the reach of the unsecured creditors by the fraudulent or voluntary act of the debtor; and to such creditors as attack the fraudulent and voluntary act, and succeed in subjecting such fund or assets, this section grants the reasonable privilege of a lien dating from the filing of a memorandum of *lis pendens,* as provided for in the section, but it would seem clear from the language of the statute as well as from a consideration of its purpose, that the lien it provides for is never perfected unless and until the deed or other act of the debtor attacked is adjudicated to be fraudulent and void. The lien otherwise remains inchoate, and cannot relate back to the institution of the suit, or to the filing of a petition therein, or memorandum of *lis pendens* with the clerk, and certainly, this must be so when, as in this case, no necessity or possibility at any time existed after the maturity of the suit of any decision of the court on the question of the validity of the deed attacked as fraudulent. As observed, the lien of the deed of trust attacked in appellant's original petition in the cause was fully released as to the stock of goods ten days after the filing of the *lis pendens* and before the original suit or petition

of appellant was matured or set for hearing, so that the lien provided for by the statute and claimed by appellant was never in fact or law perfected and could not be.

If, however, the construction of the statute contended for by appellant could be upheld, and the lien of appellant attached or was perfected upon the stock of goods when the appellant filed its *lis pendens,* we are of opinion that the lien was waived by the subsequent contracts and dealings of the appellant with Whittaker and wife and others, which have been above related, and which enabled Whittaker to continue in business as a merchant and incur new obligations to the extent, as the record shows, of several thousand dollars.

In *Howe* v. *Brick Co.,* 78 Me. 227, 3 Atl. 650, it was held that when one having a lien by statute also reserves a lien by special agreement or contract, the two liens being inconsistent, it must be presumed that the parties intended to substitute the lien by contract for the statutory lien." See also Jones on Liens (2nd ed.) sec. 1002; 25 Cyc. 673-4-5.

"A lien may be impliedly waived by acts or conduct on the part of the lien-holder inconsistent with the existence of the lien, as by his entering into a special agreement inconsistent therewith." 25 Cyc. 675.

"Any act or agreement of the lien-holder inconsistent with the rights of lien will constitute a waiver of it." 19 Am. & Eng. Enc. L. 30-31.

These principles of law, abundantly sustained by the authorities, are peculiarly applicable to the case at bar, and in no wise conflict with that other principle of law, equally as well settled, that the mere taking of additional security does not necessarily amount to a waiver of a lien already existing.

We are of opinion that the decree of the circuit court is plainly right, and it is affirmed.

*Affirmed.*